# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2013 - 1112

IRWIN INDUSTRIAL TOOL COMPANY

(doing business as Lenox),

Plaintiff-Appellee,

v.

BIBOW INDUSTRIES, INC.  and CHRISTOPHER W. BIBOW

Defendants-Appellants.

Appeal from the United States District Court for the District of Massachusetts in case no. 11-CV-30023, Judge Douglas P. Woodlock.

## **APPELLANTS' OPENING BRIEF**

Edward P. Dutkiewicz
For Appellants
PO Box 937
Dade City, FL 33526-0937
352 467 2682 (p)
352 567 5526 (f)
edduke@embarqmail.com (email)

MARCH 25, 2013

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

2013 - 1112

IRWIN INDUSTRIAL TOOL COMPANY
(doing business as Lenox),

Plaintiff-Appellee,

v.

BIBOW INDUSTRIES, INC.  and CHRISTOPHER W. BIBOW

Defendants-Appellants.

Appeal from the United States District Court for the District of Massachusetts in case no. 11-CV-30023, Judge Douglas P. Woodlock.

<u>**CERTIFICATE OF INTEREST**</u>

Counsel for the appellant, Bibow Industries, Inc. certifies the following:

1.  The full name of every party represented by me is:

Bibow Industries, Inc., a New York Corporation

and Christopher W. Bibow, individually.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:          NONE.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  NONE.

[X]    There is no such corporation as listed in paragraph 3.

-i-

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Edward P. Dutkiewicz, P.A.

Edward P. Dutkiewicz

P.O. Box 937

Dade City, FL 33526-0937

(352) 467 - 2682 (p)

(352) 567 - 5526 (f)

edduke@embarqmail.com (Email)


Dated: March 20, 2013

/s/ Edward P. Dutkiewicz

Edward P. Dutkiewicz

P.O. Box 937

Dade City, FL 33526-0937

PH: (352) 467 – 2682

FX: (352) 567 - 5565

edduke@embarqmail.com (email)

-ii-

<u>TABLE OF AUTHORITIES</u>                                    <u>PAGE</u>

Airframe Sys., Inc. v. L-3 Commc'ns Corp.

658 F.3d 100, (1st Cir.2011)          . . .          31


Anderson v. Liberty Lobby, Inc.

477 U.S. 242, (1986)                  . . .          31


Bell Atl. Network Servs., Inc. v.

Covad Communications Group, Inc.

262 F.3d.1258, (Fed.Cir.2001)         . . .          31


Bd. of Trs. of Leland Stanford Junior Univ. v.

Roche Molecular Sys.

583 F.3d 832, (Fed.Cir.2009), aff'd,

--- U.S. ----, 131 S.Ct. 2188,(2011)  . . .          30


Burroughs Welcome Co. v. Barr Laboratories, Inc.

40 F.3d 1223,                         . . .          15


Capability Group, Inc. v. American Exp.

Travel Related Services Co., Inc.

658 F.3d 75, C.A.1 (Mass.),2011       . . .          31

Carmona v. Toledo

215 F.3d 124, (1st Cir.2000)                . . .        32


*Cortland Line Co. v. Orvis Co.*

203 F.3d 1351, (Fed.Cir.2000)              . . .        31


Eli Lilly and Co. v. Aradigm Corp.

376 F.3d 1352, C.A.Fed.,2004               . . .        11


Ethicon, Inc. v. U.S. Surgical Corp.

135 F.3d 1456, 1461 (Fed.Cir.1998)         . . .        11, 12


In re NTP, Inc.

654 F.3d 1279, 1291, C.A.Fed.,2011.        . . .        11


Insituform Techs., Inc. v. Am. Home Assur. Co.

566 F.3d 274, (1st Cir.2009)               . . .        31


Landmark Screens, LLC v. Morgan,

Lewis, & Bockius, LLP

676 F.3d 1354, C.A.Fed. (Cal.),2012.       . . .        30


Landrau-Romero v. Banco Popular De P.R.

212 F.3d 607, (1st Cir.2000)               . . .        31

Linear Technology Corp. v. Impla Linear Corp.

379 F.3d 1311, C.A.Fed. (Cal.),2004    . . .    12


Massachusetts Museum Of Contemporary

Art Foundation, Inc. v. Buchel

593 F.3d 38, C.A.1 (Mass.),2010.    . . .    31


Medichem S.A. v. Rolabo, S.L.

437 F.3d 1157, 1170 (Fed.Cir.2006)    . . .    11


Price v. Symsek

988 F.2d 1187, (Fed.Cir.1993)    . . .    12


Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.

264 F.3d 1344, (Fed.Cir.2001)    . . .    12


Society of Holy Transfiguration

Monastery, Inc. v. Gregory

689 F.3d 29, C.A.1 (Mass.),2012    . . .    32


Trovan, Ltd. v. Sokymat SA

299 F.3d 1292 (Fed.Cir.2002)    . . .    12

Woodland Trust v. Flowertree Nursery, Inc.

148 F.3d 1368, 1371 (Fed.Cir.1998)        . . .              11

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

2013 - 1112
IRWIN INDUSTRIAL TOOL COMPANY
(doing business as Lenox),

Plaintiff-Appellee,

v.

BIBOW INDUSTRIES, INC.  and CHRISTOPHER W. BIBOW

Defendants-Appellants.

Appeal from the United States District Court for the District of Massachusetts in case no. 11-CV-30023, Judge Douglas P. Woodlock.

**STATEMENT OF RELATED CASES**

There is no other case filed before the Federal Circuit to which this case is related.

Dated:  March 20, 2013

/s/ Edward P. Dutkiewicz

Edward P. Dutkiewicz

P.O. Box 937

Dade City, FL 33526-0937

PH: (352) 467 - 2682

FX: (352) 567 - 5565

edduke@embarqmail.com (email)

-vii-

## TABLE OF CONTENTS

**Page**

Certificate of Interest . . . . . i-ii

Table of Authorities . . . . . iii-vi

Statement of Related Cases . . . . . vii

Table of Contents . . . . . viii

Jurisdictional Statement . . . . . 1

Statement of the Issues . . . . . 1

Statement of the Case . . . . . 2

Statement of the Facts . . . . . 2

Summary of the Argument . . . . . 8

Argument . . . . . 8

    I.  GIVING WEIGHT TO EVIDENCE . . . . 8

    II.  IMPROPER CONSIDERATION . . . . 13

Summary . . . . . 28

Standard of Review . . . . . 30

Conclusion . . . . . 32

Order Appealed From . . . . . 33

Certificate of Service . . . . . 50

Certificate of Compliance . . . . . 51

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

2013 - 1112

IRWIN INDUSTRIAL TOOL COMPANY

(doing business as Lenox),

Plaintiff-Appellee,

v.

BIBOW INDUSTRIES, INC.  and CHRISTOPHER W. BIBOW

Defendants-Appellants.

Appeal from the United States District Court for the District of Massachusetts in case no. 11-CV-30023, Judge Douglas P. Woodlock.

**APPELLANTS' OPENING BRIEF**

**JURISDICTION**

The United States Court of Appeals for the Federal Circuit has jurisdiction to hear this matter under 28 USC 1295(a)(1) in that the action and counterclaim both arise under U.S. Patent law.

**STATEMENT OF THE ISSUES**

The single issue to be determined is whether the U.S. District Court Judge erred in granting summary judgment in favor of Plaintiff Appellee, Irwin Industrial Tool Company, given the

-1-

information the Court had received in the Plaintiff's Motion for Summary Judgment and the Defendants' response to that motion. This issue is divided into two components, being whether the District Court erred in assigning weight to particular evidence so as to act as the trier of fact, and did the District Court err in misunderstanding the evidence as it relates to the case, so as to not comprehend the substantial and material issue of fact which remained to be resolved by the trier of fact.

## STATEMENT OF THE CASE

This case is centered on the issue of inventorship. There are three patents at issue, being US Patents 7195031 (the '031 patent) (A00020-29), 7373947 (the '947 patent) (A00030-41), and 7415988 (the '988 patent) (A00042 - 53). Each patent bears the same title, being "Storage System and Protective Device for Tanks".

The instant action was initiated as an action seeking Declaratory Judgment, seeking to finally determine that Christopher Bibow was not an unnamed inventor for any of the patents at issue. As a counterclaim, Bibow raised the claim of inventorship.

The Plaintiff, Irwin Industrial Tool Company, d.b.a Lenox, moved for summary judgment. Bibow responded, and the Court decided the motion in favor of Lenox. Bibow timely appealed the judgment to this Court.

## STATEMENT OF THE FACTS

-2-

Lenox, a Massachusetts based entity, is in the business of making and selling hand tools and components of hand tools. Lenox is diverse, with one of the Lenox product lines directed to making and selling torch and torch products. "Torch and torch accessories" is meant to be those products associated with the use of bottled or compressed gases for cutting, welding, heating, and soldering. A "torch" is meant to be a hand implement which the user holds and directs a flame toward a part. The torch is connected to the tank of fuel by means of a hose. "Torch accessories" is meant to be those products, such as flints, flint strikers, hose holders, torch valve wrenches, and the like. In other words, "torch accessories" are those products which are used in conjunction with the use of a torch.

Bibow Industries, a New York entity, owned and managed by Christopher Bibow, manufactures and sells a line of tools directed to the HVAC (Heating, Ventilation, and Air Conditioning) industry. As part of Bibow's line, Bibow manufactures and sells torch organizing products, which allow a user to hold and store the torch, hose, and accessories, such as flint strikers, rolls of solder and torch wrenches (used to open and close the torch tank valve). Bibow also sells "torches", which he purchases from other distributors or manufacturers.

In 2003 Bibow contacted Lenox with the intention of working with Lenox to produce a torch tool managing line of products.

-3-

Conversations between Bibow and Lenox were ongoing from 2003 until 2005.

Before April 2004, Bibow was concerned with developing an expanding line of torch accessories.  He looked to the problems which plagued the torch users.  One of the problems identified was the carrying, or handling, of a tank of fuel.  Tanks may be samll and hand held, such as "MAPP" bottles, and tanks may be large, having a length of up to four feet in height.  In between this range is where most of the tanks in use are found.  These tanks are about thirty inches in height an weight about twenty to forty pounds.  At that time, most workers using such tanks carried the tank by holding the tanks valve and valve stem in between their fingers, using the valve like a handle.

In April, 2004, Bibow thought of a  a component (or device) with which to attach a carrying handle to a tank of fuel (hereinafter referred to as a "tank").  Some torch heating methods require both a fuel (such as acetylene) and a source of oxygen, both being mixed at the hand torch.  In this system, two tanks are required.  Some torch heating methods only require a fuel, such as acetylene or propane, meaning that a single tank is all that is required, with the hand torch mixing ambient oxygen with the fuel. The Bibow device was directed to use with a single tank.

-4-

On July 17, 2004, Bibow filed a disclosure statement (A01265) with the Patent Office (A01267, payment for filing), in which Bibow disclosed :

> "The top half of the design clearly shows my Tank handle technology with a handle designed for the human hand to FIT into IT, and thus be conformed to the "inside face of the closed human hand" in order to provide comfort-of-use (ergonomic features); while the bottom half of my tool will be precisely and/or generically (one size fits all) engineered to be cast / forged / or otherwise attached by the regulator nut (or some other portion of the reg.), which then screws onto the valve stem of the B-tank.  IF not attached here, my Tank Handle Technology can be placed on the shell of the regulator.  IF not attached here, my Tank Handle technology could be made as a separate piece (as it is now), a separate tool with the LEG of the Handle having a hole drilled out to allow the threaded or flared receiving end of the valve stem to SLIDE through it only to ENABLE the typical regulator NUT of a B regulator to be made UP – on the valve threads – thus tightening down the regulator, the tank Handle Hook onto the valve stem".

Bibow then provides a drawing (A01266) an annotates the drawing with the following passage:

"OR can/will have my/ should have my Tank Handle Technology incorporated into the design of the regulator/ reg nut, etc. or attaches on <u>shell</u> of the reg."  (Underline in original).

After filing the disclosure, Bibow had discussions with Lenox representative, Jon Schlosser.  Bibow told Schlosser of his idea to have a handle cast onto the shell of the regulator.  When asked to identify those parts of the '031 patent he described to Schlosser, Bibow explained his communications with Schlosser, and described how Bibow had disclosed his idea of encasing the regulator with a plastic handle (A00835; L 7 -20).  It appears that Schlosser

-5-

recognized that such casting would solve a problem which Lenox recognized, being the unprotected regulator gauge.

There were many conversations between Schlosser and Bibow (A00831; L 7 - 13). In fact, deponent, Mark Catron, stated that Bibow had talked with Schlosser so many times that he (Bibow) was considered to be a "nuisance" (A01004, L21 - A01005, L 14). Bibow had testified as to the scope of the disclosures to Schlosser after filing the disclosure document with the Patent Office (A00914, L 8 - A00918, L 2). Schlosser, throughout his testimony, does not contest Bibow's statements that Bibow had provided information to Schlosser, leaving a substantial question of material fact as to what was told to the Lenox representative, Jon Schlosser, in regards to the tank handle which Bibow had described in his disclosure document as a handle which encased a regulator.

On November 17, 2004, Bibow had a telephone conference with Lenox representatives Goodgame, Blodget, and Schlosser, as evidence by the memorializing letter of November 17, 2004 (A01315), wherein Bibow states that the Lenox Executives reviewed his web site with him. The pages of the Bibow web site are provided (A01323-01329) which demonstrate some of the Bibow technologies. This is in addition to the contents of the disclosure document (A01266), cited supra.

Shortly after November 17, 2004, Lenox demonstrates, in discovery documents, activity related to the patents at issue.

-6-

Before the telephone conference with Bibow, Lenox can only produce a single set of drawings, with a penciled in date of September, 2004, to demonstrate any developmental activity as it would relate to the patents at issue.

In its motion for Summary Judgment, Lenox relies on its own Statement of Fact, in conjunction with deposition testimony of Catron, Schlosser, and Trettin, the three named inventors of the patents at issue. Lenox only refers to a "study" done in 2002 (A00133) which identified perceived problems associated with the handling of tanks. In response, Lenox developed a "suitcase" device" used to carry tanks to support its claim of inventorship, (A00133), called the "Victor-Beater", which failed to be a successful product. The only evidence presented by Lenox as to inventorship was a set of three sketches claimed to be made by Catron, with the penciled in date of September 3, (A00342) and September 28 (A00343), and September 28, 2004 (A00344), respectively. The penciled in date is not shown with any other indicators, such as time, date, or witness, to demonstrate that the date presented is the date, in fact. Lenox neither produced or referenced any email, letter, or other communication which would either validate or support any invention within the time frame claimed by Lenox, and Catron.

On March 5, 2005, Lenox filed three patent applications, for the patents at issue. On or about March 15, 2005 Lenox, in a

letter, informed Bibow that Lenox no longer desired to have communications from Bibow (A01350) unless his technology was patented.

In 2011 Bibow discovered the Lenox had two additional patents, with Schlosser listed as one of the inventors, and Bibow contacted Lenox to discuss settlement regarding his inventorship. Lenox filed a declaratory judgment action and Bibow counterclaimed to be a named inventor, or to invalidate the patents at issue.

At the close of discovery, Lenox filed a motion for summary judgment, which was granted. This timely appeal followed.

## SUMMARY OF THE ARGUMENT

I. The District Court erred when it gave weight to evidence, and rendered a judgment in favor of the Plaintiff, rather than deciding on the issue of whether there was a substantial and material issue of fact which remained to be resolved.

II. The District Court erred in that it failed to properly consider the evidence, it had before it, which established a substantial and material issue of fact.

## ARGUMENT

I. GIVING WEIGHT TO EVIDENCE

The Court made specific note of the "posted" drawing by Catron (A00739), though there is no evidence of any "posting". Bibow's affidavit states:

> "On September 30, 2004, Mark Catron posted a picture on the internet, stating that he had invented a tank carry handle

-8-

for an acetylene gas regulator.  Mark Catorn claimed that he had invented all the technology, being the sleeve, the combination of a sleeve tool, and the accessories holder which included a traditional air-torch.  On his webpage Mark Catron stated "The product manager only asked for a sketch showing a protective rubber or plastic ring for the regulator / gauge assembly.  The rest of the product features grew out of my observations and ideas". . . ."  (A01157)

In paragraph 52, following, and referring to the Catron "posting", Bibow states:

"I do not know when the online pictures were actually produced, in that I became aware of the on-line information years later" (A01157-58).

Bibow's reference to "posting" was the date penciled in on the Catron drawing.  As such, the Court weighted the supposed "posted" evidence, finding it more credible than Bibow's evidence of communication and inventorship of like technology.  All this disregards Bibow's affidavit, which is supported by exhibits, such as letters to Lenox and emails to Lenox, as well as a document disclosure statement which was filed with the Patent and Trademark Office (PTO).

In Bibow's affidavit and supporting exhibits, Bibow demonstrates that the first time he viewed the Catron figures on the internet was on July 18, 2011 (A01304).  Judicial notice may be had of the internet web site which is available to the general public through the internet archive search engine, being:

http://web.archive.org/liveweb/http://www.coroflot.com/markcatron/Lenox-TankTote

-9-

which shows that the picture of the tank handle which bears the date of September 4, 2004 was first published on the internet on August 3, 2008. There are no other records available to the public, or produced to the Court, which demonstrate that the drawings were made in September 2004, or "posted" at that time.

The September 2004 date is, of course, later than the date when Bibow first disclosed his tank handle which was cast around the regulator, to Jon Schlosser. Of note is that there is not produced, as evidence, one letter, email, or other verifiable communication between any of the three inventors, who, at that time, were located in different cities.

In Lenox's Motion for Summary Judgment, Lenox relies, as evidence, upon its own statement of facts (SOF), declarations by it attorney (Burlingame), a 2002 study, and a 2003 drawing of a suitcase for carrying tanks and accessories.

Lenox counsel states:

> "from this study and other interactions with end users, Schlosser helped develop ideas to protect and store smaller oxy-acetylene tanks, and the core ideas disclosed in the Lenox Patents".

(A00132). This self serving statement is not backed by one piece of evidence. There are no emails presented, no letters, nor any other documentation which showed that Schlosser had any idea, or that he helped to develop any idea. The Court appears to have accepted these statements of a listed inventor as fact, and has looked no further. As such, the Court has given such self serving

-10-

statements the weight of evidence. This, Plaintiffs submit, is an error.

Lenox states that it assembled a "team", but produces not one piece of evidence that the team was working on developing any of the ideas which would mature into the patents at issue.

The Court relies on the Catron drawing (an inventor drawing), which has a penciled in date of September 2004. There has not been produced one piece of corroborating evidence that indicates that the drawing was, in fact, in existence at that time.

> "An inventor cannot rely on uncorroborated testimony to establish a prior invention date. *Id*. [citing 37 CFR 1.131(b)] It has long been the case that an inventor's allegations of earlier invention alone are insufficient—an alleged date of invention must be corroborated. Medichem S.A. v. Rolabo, S.L., 437 F.3d 1157, 1170 (Fed.Cir.2006); Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371 (Fed.Cir.1998). "[E]vidence is assigned probative value and collectively weighed to determine whether reduction to practice has been achieved." Medichem, 437 F.3d at 1170. "Sufficiency of corroboration is determined by using a 'rule of reason' analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony." Id."

In re NTP, Inc., 654 F.3d 1279, 1291, C.A.Fed.,2011. There is no corroborating evidence that Catron invented or presented the dated drawing to anyone. As the Court notes, "the alleged co-inventor must provide corroborating evidence about the inventive process and communications with the named inventors" (citing Eli Lilly, 376 F.3d at 1359; Ethicon, 135 F.3d at 1461) (A00741). The Court misses the heart of the quote which deals with corroborating

-11-

evidence and what constitutes corroborating evidence, The Eli stated:

> "A party seeking correction of inventorship must provide clear and convincing evidence of inventorship. <u>Hess</u>, 106 F.3d at 979-80; <u>Ethicon, Inc. v. U.S. Surgical Corp.</u>, 135 F.3d 1456, 1461 (Fed.Cir.1998). To meet the clear and convincing evidentiary burden, the alleged co-inventors must prove their contribution to the conception with more than their own testimony concerning the relevant facts. <u>Trovan, Ltd. v. Sokymat SA</u>, 299 F.3d 1292, 1302 (Fed.Cir.2002) (citing <u>Price v. Symsek</u>, 988 F.2d 1187, 1194 (Fed.Cir.1993)). Whether the co-inventor's testimony has been sufficiently corroborated is evaluated under a "rule of reason analysis," which requires that an "evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." <u>Price</u>, 988 F.2d at 1195. Corroborating evidence may take many forms. Reliable evidence of corroboration preferably comes in the form of records made contemporaneously with the inventive process. <u>Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.</u>, 264 F.3d 1344, 1350-51 (Fed.Cir.2001). Circumstantial evidence of an independent nature may also corroborate. <u>Trovan</u>, 299 F.3d at 1303. Additionally, oral testimony from someone other than the alleged inventor may corroborate".

<u>Linear Technology Corp. v. Impla Linear Corp.</u>, 379 F.3d 1311, 1327, C.A.Fed. (Cal.),2004. The disclosure document is corroborative evidence of Bibow having the idea, concept, and structure of a tank handle which is:

> "cast / forged / or otherwise attached by the regulator nut (or some other portion of the reg.), which then screws onto the valve stem of the B-tank. IF not attached here, my Tank Handle Technology can be placed on the shell of the regulator".

(A01265). Other reliable records, such as emails, show an ongoing exchange of ideas and communication between Lenox and Bibow. Deposition testimony (Catron and Schlosser, as well as Bibow)

demonstrate that conversations were ongoing (A00455; L 26 - 456; L 7).  This is circumstantial evidence which demonstrates that the parties were communicating, though Schlosser can not seem to remember what was said.  Bibow, however, has a clear recollection (A00453; L1-454-55; L 17).

The Court appears to ignore the plain language of the disclosure document and the undisputed fact that Bibow communicated with Lenox representatives, as well as the disclosure document (A01265, A01269).

The Court assumes that the document was "posted", though there is no evidence of any form of "posting".  If "posted" is meant to mean that the drawing was reduced to paper, then that entire proof turns on when the date was penciled in on the paper.

II.    IMPROPER CONSIDERATION OF EVIDENCE OR CONSIDERATION OF FACTS NOT IN EVIDENCE

The Court, in its memorandum and order (A00733) recited the facts of the case.  In particular, the Court stated:

> "In July 2004, Bibow also filed disclosure documents with the PTO for a "regulator with tank carry handle."  Bibow described a handle that would be "cast / forged / or otherwise attached to the regulator nut (or some other portion of the reg.)."  Those initial disclosure and later application would mature into U.S. Patent Number 7,4898,276."

(A00738).  The Court erred when it did not proceed further in the analysis of the quote cited, in order to gain an understanding

-13-

of what Bibow was actually disclosing.  The entire passage which
explains Bibow's disclosed device is:

> "The top half of the design clearly shows my Tank handle
> technology with a handle designed for the human hand to FIT
> into IT, and thus be conformed to the "inside face of the
> closed human hand" in order to provide comfort-of-use
> (ergonomic features); **while the bottom half of my tool will
> be precisely and/or generically (one size fits all)
> engineered to be cast / forged / or otherwise attached by the
> regulator nut (or some other portion of the reg.), which then
> screws onto the valve stem of the B-tank.  IF not attached
> here, my Tank Handle Technology can be placed on the shell of
> the regulator.**  IF not attached here, my Tank Handle
> technology could be made as a separate piece (as it is now),
> a separate tool with the LEG of the Handle having a hole
> drilled out to allow the threaded or flared receiving end of
> the valve stem to SLIDE through it only to ENABLE the typical
> regulator NUT of a B regulator to be made UP – on the valve
> threads – thus tightening down the regulator, the tank Handle
> Hook onto the valve stem". (bold mine)

(A01265).  In essence, Bibow was describing that device which
would eventually be subject of the patents at issue.  Bibow
described a handle which is found in the patents at issue, being
patent '947 (A00035, Fig 7, ref.item 144) which has an upper grip
(id. ref.item 138) and a lower portion (id. ref.item 112), which
would be cast on the regulator nut, or placed (cast) on the shell
of the regulator (A00032, Fig 1, ref.item 5).  The Lenox patents
teach a tank handle which also has an upper handle and a cast
housing for the shell of the regulator (which includes the gauges).
Bibow, disclosed, to the PTO, the Lenox device.  Bibow could prove
that he had the device in mind when he filed his original
disclosure with the patent office (A01265).  This document is

-14-

proven to be filed by the PTO disclosure document receipt (A01274) which demonstrates a receipt date of July 19, 2004.

In its analysis, the Court stated:

> "The only corroborated contributions Bibow made to the invention of the lenox patents, however, are his TankMate and Tank Handles as conceived in 2004 and communicated to Lenox".

(A00742). In its analysis, the Court misses the mark. The disclosure document plainly describes the casting of a handle on the shell of the regulator, as is done by Lenox in the patents at issue. As noted by the Court, and remarkably, set aside in its analysis, "It is clear, however, that "[c]onception is the touchstone of inventorship." <u>Burroughs Welcome Co. V. Barr Laboratories, Inc.</u>, 40 F.3d 1223, 1227-28)" (A00744).

The corroborated evidence plainly indicates the Bibow had the knowledge  of the configuration of a tank handle which would eventually be claimed by Lenox for its own. On the other hand, Lenox has only provided a penciled in date on a drawing, with no other indication of the actual date of rendition to paper. The Lenox exhibit is wholly uncorroborated, and is a document by an inventor, which may be viewed as self serving.

The Court also erred, in this regard, when it stated:

> "in September 2004, Catron **posted** pictures of a tank handle attached to a gauge protector, as eventually reflected in the Lenox patents". (bold mine)

(A00739). There are no facts which support the Court understanding that any such document was "posted", in that no

evidence has been provided to either the Court, or the Defendant, that any such documents had been "posted", or actually made, at this time.  This apparent assumption by the Court is not supported by the facts.  Bibow, in his affidavit, erroneously understood the posting date to be September 30, 2004, Bibow stating the Catron posted the picture on that date, but he {Bibow) could not say when the picture was created (A01157).  Bibow relied on his viewing of the Catron web site on July 18, 2011 (A01304).

The Catron drawing was produced, in discovery, in 2011.  There is no evidence which supports Catron's posting of the drawings referred to by the Court, "in September 2004".  The September 2004 date was penciled onto the drawing, and there is no indication, other than the penciled in date, that the drawing was produced when Catron claimed to have done so.  There has not been one shred of corroborative evidence which supports the Court's statement that the drawings were "posted in September 2004".  In fact, Lenox has not provided to the Court any evidence that such a drawing even existed, other than the drawing itself, with a penciled in date.

The Court has, erroneously, misinterpreted the evidence to assume that the September 2004 date was the date when the drawings were posted, thereby validating the 2004 date, because, ostensibly, that was the date on the figure.  There is nothing to support such a determination.  The Catron drawings were downloaded by Bibow, from the internet, on July 18, 2011 (A01302 - 1306).  Of all the

-16-

Catron drawings in evidence (A00314-348) not one has a verifiable time or date stamp upon which the date of reduction to paper can be determined to be prior to the discussion of Bibow with the Lenox executives, on November 17, 2004. There is not one email, letter, correspondence, or witness signature, which can validate the Catron drawings in September 2004. Likewise, there are other drawings, also with a penciled in date of September 28, 2004, which also lack any verifiable indication that such drawings were actually made on that date.

Judicial notice may be had of the internet archive web site, web.archiev.org, which is an internet archive site, and available to the public, which shows that there is no record of the www.markacatron.com web site before 2009, the earliest date of a record is Feb 27, 2009 for Catron's web site. Moreover, Lenox has not produced any document of any existence of a Catron web site where the Catron drawings might have been "posted".

There are two pages which show a printed date of March 17, 2005 (A00323-24), but nothing more. The Court relies on penciled in dates which would have been added at any time between November 2004 and 2008.

The Court did not appear to have understood that the 7588256 Bibow patent was not filed until January 3, 2005, and that the patent is not relevant to the disclosure document which disclosed a tank handle which could be "cast" and "attached to the shell of

-17-

the regulator (A01265 - 66), or to the verbal disclosures Bibow made to Lenox, which is the sole issue in this case.

A review of the Lenox arguments to the Court may be of assistance. In argument (A00130-133), Lenox referenced the attorney's statement of facts, a 2002 "study", declarations of Schlosser, some sketches of a device which was not successful in the market (Victor Beater), and some sketches which had the date penciled in. There is not one piece of referenced evidence which is independently time and date stamped, or noted in any way, which would demonstrate that the dated documents (the sketches of the handle) were actually in existence at the time claimed by Plaintiff, Lenox.

Bibow, on the other hand, had produced incontrovertible proof (the time date stamp of the PTO) that he had the concept and the understanding of the device at issue. Bibow can prove that he spoke with Lenox executives to the point that he was considered to be a "nuisance". It should be noted that in Schlosser's testimony (who was the person with whom Bibow spoke prior to November 17, 2004), Schlosser stated that he could not "recall" the substance of the communications with Bibow or the inventive process. Schlosser made such a statement a number of times (A00611, LL 12,18,23; A00611 LL 13, 23; A00620 L 2; A00625 L 4; A00628 L 4; A00639 LL 8, 13, 24; A00630 L 14; A00631 L 22). Schlosser does recall receiving some communication from Bibow, but does not recall the substance.

-18-

Juxtaposed with the Catron deposition that Bibow had contacted Schlosser to the extent that Bibow was considered a "nuisance", when questioned, Catron stated:

> "Q    Uh-huh.    An what was the essence of the information he [Schlosser] provided you, relative to Bibow and/or Bibow Industries?
>
> A    I would say the essence of it was that Mr. Bibow was in constant contact with him, I guess, pitching him ideas of some sort, and almost to the point of being a nuisance, if I remember correctly, that's kind of my recollection of his [Schlosser's] interaction with Mr. Bibow."

(A01005 LL 6 - 14).

This aspect is not one of "he said" "she said", but one of "he said" and "She doesn't recall".    Such one sided recollection of conversations certainly should raise a substantial material issue of fact which needs to be resolved by a jury.    If Schlosser did not recall the substance of the many conversations with Bibow, and Bibow has precise recollections, a material and substantial issue of fact arises, which should militate against a granting of a summary judgment motion.

In Schlosser's own declaration, he states "I do not recall any communications with Bibow about Bibow's disclosures to the PTO, his Patent application to the PTO, or his issued patents". (A00353,¶ 21).    Schlosser then repeats his lack of recall four more times (A00354) regarding Bibow's "flat handle" attached to a regulator, Bibow's tank sleeve, Bibow's pocket feature of the tank sleeve, and Bibow's hose wrap assembly.    Schlosser does not deny such

-19-

conversations took place, only that he "did not recall" any such conversations.

Bibow first produced documentation of his development of the concept of a tank handle and the Lenox handle. Originally his concept began as a wire tank handle (A01205) which shows a picture creation date of April 5, 2004, at 6:28 PM. The combination of the hose wrap, accessory holder, and tank handle is then shown in a picture taken and loaded into Bibow's computer on July 31, 2004, at 6:12 PM. (A01206). The picture taken and downloaded on November 10, 2004 shows how the handle is attached to the gas passageway, much like the way the Lenox handle also attaches to the gas passageway (A01201). The photograph, shown as Bibow Exhibit 3-B-13, was taken on January 11, 2003, and loaded into the computer on December 2, 2004. This picture also shows the combination of the tank handle, the hose wrap, and the carrier for accessories.

Bibow documents his communications with Schlosser and Irwin, where on March 9, 2004 (A01251), he writes about a collaborative effort of Bibow Industries and Irwin to produce his tank handle (which was his idea, before filing his disclosure document disclosing the tank handle cast on the regulator (A01266). Bibow communicated with Schlosser regarding co-marketing products (A01254-1255). Bibow also documents a telephone recorded call from Daniel Davis regarding his conversations with Schlosser, which is verified by a notary who transcribed the telephone message (A01262

-1263).   Bibow's disclosure document, of July 17, 2004, specifically teaches a handle cast on a regular shell (A01265), or "attached to the <u>shell</u> of the reg." (A01266) (underline in original).

Also presented to the Court is the disclosure document which was filed by Bibow on March 31, 2006.  While this date is after the filing of the Lenox patents, it is significant in that it describes the Lenox patent (which was not published at this time) as it relates to the sleeve.  The question arises as to how Bibow, who had no knowledge of the Lenox patent applications or their content, file a disclosure document which describes the Lenox patent application material.  Bibow's disclosure of such a configuration in a disclosure document could be explained in that Bibow had the idea, disclosed the idea to Schlosser and Goodgame during his November 17, 2004 telephone conversation, and then, when Lenox would no longer communicate with Bibow, Bibow then filed his own disclosure, not knowing that Lenox had already filed a patent application for Bibow's technology, claiming it as their own idea.

A study of the brief time line involved in this appeal may be helpful.

| | 2002    Lenox does "study" which identifies "problems". |
|---|---|

| | |
|---|---|
| 2003 Bibow makes and sells tank hooks. Bibow files a patent application for the tank hook. | 2003    Lenox makes "victor beater", a suitcase for tanks, which is not marketed. |
| Bibow begins talking with Jon Schlosser about his inventions. | Lenox representatives see Bibow's table at a tradeshow. |
| 2004    April 2004--Bibow describes and makes his tank handle and files a patent application. | 2004    April 2004– Lenox works on new hand torch. (This is the "neat invention" to which Schlosser and the Court, refer) (A00737) |
| July 2004  Bibow files a Patent disclosure document for a tank handle cast on the shell of a regulator. This is filed with the PTO by Bibow. | |
| July 2004– After filing his disclosure document, Bibow has multiple discussions with Lenox rep., Schlosser. | |

| | |
|---|---|
| August - November 2004 Bibow continues his communications with Lenox through emails, letters and telephone calls. | Sept 2004 - penciled in date on drawing by Catron. (For this time frame, Lenox has not provided any evidence of email communications, or  letters between Catron, Schlosser and Trettin, who are located in different cities and are supposed to be working on the project, together. |
| November 17, 2004   Bibow has a telephone conference with Goodgame, Blogett, and Schlosser, wherein they review Bibow's web site, and he talks about his ideas, which include a handle attached to the shell of the regulator. | |

The Court discusses the patent disclosures and the patent applications and patents which are issued to Bibow.  The Court errs when it assumes that "those initial disclosures (referring to the disclosure document which describes casting the handle on the regulator or shell), and latter application, would mature into U.S.

-23-

Patent Number 7,588,276". This is not accurate. Some of the disclosures were used for the patent applications and patent. Some of the disclosures (the tank handle being cast on the regulator) did not mature into any patent, but were disclosed to Lenox, after the filing of the disclosure document (A01265-1266). The Court makes the assumption that all information was used in the '276 patent application, which it was not. At that time PTO Disclosure documents were held for two years, enabling the inventor to have an idea, and preserve his inventorship of the idea for two years, before the document was discarded by the PTO. As long as there was no public disclosure, sale, or offer for sale, for more than one year, a patent application could later be filed.

In holding the '276 patent as "relevant", the Court states:

> "As relevant here, the '276 patent claims a "tank handle system," involving a "tank handle" with a "generally flat configuration," which couples by use of a threaded nut to a tank's gas passageway and gas pressure regulator".

(A00738). The Court gives undue weight to Bibow's patent for a "flat" handle. The Court does not properly understand that the Disclosure document describes a handle cast on the shell of a regulator, which is different from the "flat" handle which the Court finds as "relevant". The existence of the '276 patent is relevant insofar as it demonstrates that Bibow was actively engaged in developing a series of products which address the needs of the industry. What is very relevant, is that the disclosure document, which is time and date stamped, demonstrates that Bibow had the

-24-

idea, concept, and construction, in mind, when he talked with Lenox representative Schlosser, who, in his testimony, cannot recall the substance of the conversations.

Through 6 exhibits and 98 pages of those exhibits, there is not one verifiable time-date stamp on any drawing, sketch, or communication which is prior to the November 17, 2004 conversation between Bibow, Goodgame, Blodgett, and Schlosser. There is not one communication produced which predates the November 17, 2004 date, and there are no other forms of communications between the three inventors, Schlosser, Trettin, and Catron in which any invention is discusses, mentioned, or depicted. Bibow's affidavit, along with his evidence as to inventorship and communication with Lenox supports a legitimate, material and substantial issue of fact which needs to be resolved by a jury. The Court erred when it assumed, without any proof, that the Catron date of September 4, 2004 was controlling. Even if this were verifiable, there is a substantial question raised by Bibow's stated conversations with Schlosser, and Schlosser's inability to recall the substance of any of the conversations with any detail. All this goes to a misinterpretation of the evidence presented to the Court.

In its analysis, the Court overlooked the circumstantial evidence, which supports the hard evidence (the disclosure document A001265). Bibow, in his affidavit (A01143-1163), states the content of his conversations and to whom he spoke (A01144, ¶5). In

March 2004, Bibow states that in his conversation with Schlosser (A01151, ¶30), Schlosser stated that "we [Lenox] don't have any clear direction with our go-to market stretgy, we don't know what type of air-fuel torches we're launching", demonstrating that Lenox did not have a product in mind for marketing. Bibow's statement (A01155, ¶44) of July 2004 is supported by the filed disclosure document (A01265).

The Court also missed the relationship between the Lenox device and the Bibow device, analyzing them as separate entities.

The Court's analysis ignores the similarities between the Bibow device and the Lenox device which is demonstrated by the record. A side view shows the similarities. The Bibow device (A01201 [side view] and A01202 [front view] shows that there is a handle, and the handle has a lower portion. The gas passageway passes through the handle, through an opening in the handle. From a side perspective, as shown in the patent drawings (A00023, Figures 3 and 4, and A00034, Figure 8) of the Lenox device, one can see the handle and the opening (just like the Bibow device) and the lower portion wraps around the gas passageway (ref item 108 (A00051, Col 4, L 47). Bibow, in his disclosure (A01265), describes encasing or casting the handle around the regulator, which is done by Lenox. It is true that Lenox has added a casting around the gauges, however, the gauges are part of the regulator. Also, the weight of the tank is born by the wrapping of the handle

around the regulator, and not the gauges.  The evidence  supports the conclusion that Bibow had the concept of casting the handle around the regulator, and that Bibow gave that information to Lenox.  Lenox was obligated to list Bibow as an inventor, which it did not.

Other circumstantial evidence of Bibow providing information for the patents at issue, in particular, the tank sleeve, is the filing by Bibow of a disclosure document for his tank sleeve on March 31, 2006 (A01443).  Admittedly, this is a year and a twenty six days after Lenox filed its application for a sleeve.  However, Bibow did not have any information from Lenox regarding their applications for a long time after the disclosure document was filed.  The question arises as to how Bibow could have an idea which was the same as that which was contained in the Lenox patent applications which were, at the time of the filing of the disclosure document, not available to the public or to Bibow.  A reasonable explanation is that Bibow had provided the information regarding the sleeve to Lenox.  Afterwards, Bibow decided to file the disclosure document to protect his idea of the tank sleeve.

The circumstantial evidence, the long time communications, the statements by Bibow regarding the disclosures, the lack of any product development by Lenox until after the time when Bibow stated he disclosed the concept of the tank handle being wrapped or cast around the regulator, is all anchored by Bibow's disclosure

-27-

document, which proves his possession of the concept, and when he developed the concept.  The Court erred when it considered the patents and ignored the disclosed material and the circumstantial evidence which is linked to the disclosure document.

## IN SUMMARY

The Court has overlooked substantial circumstantial evidence, which, taken together, presents a justiciable question and issue of fact which needs to be resolved by the finder of fact.  In summary, Bibow submits the following:

(1) Bibow has been developing accessories such as tank handles, hose containment devices, accessory management tools since 2003.(A01147, ¶12; A01177; A01196 - 1199).  The creation of the computer photos is demonstrated as computer files (A01199-1204).

(2) Bibow was in contact with Lenox personnel (Jon Schlosser) from about August 8, 2003 (A01148, ¶16-20).  In these conversations, Bibow discussed his products, which were the hose management device and the tank handle (A01241; proof of mailing, 1242-44; Letter to Schlosser, A01245-46; Email to Schlosser, A01250-52; email to Schlosser) (transcript of call from Daniel Davis of Lenox to Bibow (A01262-63).

(3) On July 17, 2004, Bibow disclosed his handle which was cast around the regulator (among other configurations) to the Patent Office using the then available Disclosure Document Protocol (which has since been discontinued) (A01265-66; see also A01274).

Bibow then disclosed his tank handle which was cast on a regulator to Jon Schlosser, who stated he (Schlosser) was impressed with Bibow's developments (A01156, ¶46-47).

(4) At the end of July 2004, Bibow discussed his tank handle developments and tank sleeve with Schlosser (A01156, ¶48).

(5) In August, 2004, Mark Catron was hired by Lenox. When hired, in August 2004, Catron had no experience in the field of acetylene tanks (A01001; L 16-21).

(6) There is no evidence presented which indicates any communications between any team members working on the supposed torch handle project, in the time frame of August 2004 until after November 17, 2004, after the telephone conference call between Bibow, and Lenox personnel, Goodgame (CEO), Blodgett, and Schlosser.

(7) During the November 17, 2004 telephone conference with Lenox personnel, Bibow reviewed his web site and presented his modifications of this handle, which included a handle encasing the regulator. He discussed combining a hose handling system and a tank sleeve. He also discussed the positive financial impact such a system could have on the Lenox sales figures, and bottom line (A01159, ¶55).

(8) Bibow followed-up his telephone conversation with the Lenox personnel with an email of November 19, 2004, referencing the conference call (A01318).

-29-

(9) In March, 2005, Lenox filed the three patent applications which resulted in the patents at issue.

The corroborative evidence, as well as the affidavit statements, present a strong circumstantial case. All together, with the complete absence of any verifiable corroborative evidence on the part of Lenox as to invention or development of the tool until after conversations with Bibow by Lenox personnel, makes a strong case, which must be presented to a jury. The sufficiency of the corroboration is determined by using a 'rule of reason' analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony. (See: *In re NTP, Inc.*, 654 F.3d 1279, 1291, C.A.Fed.,2011, cited supra).

**STANDARD OF REVIEW**

In this instance, the standard of review is determined by the law of the district where the case originates and is appealed from. This court "reviews the district court's grant or denial of summary judgment under the law of the regional circuit." <u>Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys.</u>, 583 F.3d 832, 839 (Fed.Cir.2009), aff'd, --- U.S. ----, 131 S.Ct. 2188, 180 L.Ed.2d 1 (2011) (internal quotation marks omitted) (hereafter "<u>Roche</u> ")<u>. Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP</u>, 676 F.3d 1354, 1361, C.A.Fed. (Cal.),2012.

In the District of Massachusetts, the standard of review for summary judgment is de novo. "We review the district court's grant

-30-

of summary judgment de novo. Insituform Techs., Inc. v. Am. Home Assur. Co., 566 F.3d 274, 276 (1st Cir.2009)". Massachusetts Museum Of Contemporary Art Foundation, Inc. v. Buchel, 593 F.3d 38, 52, C.A.1 (Mass.),2010. The Federal Circuit's standard is congruous with that of the First District. "We review a grant of summary judgment by a district court de novo". Cortland Line Co. v. Orvis Co., 203 F.3d 1351, 1355-56 (Fed.Cir.2000). The Federal Circuit Court of Appeals (FCCA) stated:

> "Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A district court may not resolve infringement on summary judgment unless no genuine factual issue remains".

Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc., 262 F.3d.1258, 1265 (Fed.Cir.2001).

In the First District, that Court held:

> "The standard of review on summary judgment is de novo drawing inferences in favor of the non-moving party. Landrau-Romero v. Banco Popular De P.R., 212 F.3d 607, 611 (1st Cir.2000)".

Capability Group, Inc. v. American Exp. Travel Related Services Co., Inc., 658 F.3d 75, 79, C.A.1 (Mass.),2011. That Court later stated:

> "We lay the foundation of the applicable standard of review. Summary judgment is properly granted where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). We examine the district court's grant of summary judgment with fresh and searching eyes, Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 105 (1st Cir.2011),

keeping their lenses tinged towards "construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor." <u>Carmona v. Toledo</u>, 215 F.3d 124, 131 (1st Cir.2000)".

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*,

689 F.3d 29,39, C.A.1 (Mass.),2012.

**CONCLUSION**

The Defendants in the present case request that the Federal Circuit Court of Appeals vacate the lower District Court's order granting summary judgment, and that the Federal Circuit Court of Appeals remand this case to the First District for further procedures, including trial on the merits.

Respectfully submitted,


/s/ Edward P. Dutkiewicz

Edward P. Dutkiewicz

FL Bar # 0883387

PO Box 937

Dade City, Florida 33526

Tel:  (352) 467-2682

Fax:  (352) 567-5526

Attorney for Defendant/Appellants

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, and the rules regarding electronic filing, the Appellant in the above entitled appeal has served all parties of record, via the Court's electronic filing system, on this the 25th day of March, 2013. Six paper copies of the Appellants' Opening Brief will be filed with the Court upon acceptance notification by the Court.

/s/ Edward P. Dutkiewicz

Edward P. Dutkiewicz

FL Bar # 0883387

PO Box 937

Dade City, Florida 33526

Tel:  (352) 467-2682

Fax:  (352) 567-5526

Attorney for Defendant/Appellants

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STLE REQUIREMENTS**

This brief complies with the type-volume limitation of Federal
Rule of Appellate Procedure 32(a)(7)(B).

[X]    The brief contains 7,384 words, excluding the parts
of the brief exempted by Federal Rule of Appellate
Procedure 32(a)(7)(B)(iii), or

[X]    The brief uses a monospaced type face and contains
842 lines of text, excluding the parts of the brief
exempted by Federal Rule of Appellate Procedure
32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal
Rule of Appellate Procedure 32(a)(5) and the type style
requirements of Federal Rule of Appellate Procedure
32(a)(6).

[ ]    The brief has been prepared in a proportionally
spaced typeface using or

[X]   The brief has been prepared in a monospaced typeface
using Microsoft Word in New Courier, size 12.


Dated: March 25, 2013

                          Respectfully submitted,


                          /s/ Edward P. Dutkiewicz

                          Edward P. Dutkiewicz

                          FL Bar # 0883387

                          PO Box 937

                          Dade City, Florida 33526

                          Tel:  (352) 467-2682

                          Fax:  (352) 567-5526

                          Attorney for Defendant/Appellants